**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re: Case No. 10-33023 - DHW
Chapter 13

ROBIN MARIE PHILLIPS,

Debtor.

---

In re: Case No. 13-30162 - DHW
Chapter 13

ALBERT DOTSON

Debtor.

## MEMORANDUM OPINION ON TRUSTEE'S OBJECTIONS TO MODIFIED PLAN AND HARDSHIP DISCHARGE

These chapter 13 cases present a similar legal issue. In the Dotson case, the debtor has moved to modify the plan offering to pay less to unsecured creditors than under the original plan. In the Phillips case, the debtor has moved for a hardship discharge. The chapter 13 trustee opposes both motions contending that the so-called "best interest test", made applicable to modified plans by 11 U.S.C. § 1329(b)(1) and to hardship discharges by 11 U.S.C. § 1328(b)(2), is not satisfied.

The disputes center on the timing of when, in these situations, the best interest test is to be applied. The trustee contends that the test is to be applied with estate property valued as of the date of the original plan confirmation. Conversely, the debtors maintain that the test should be applied as of the date of the modified plan or the date of the hardship discharge motion; considering the value of estate property at that later time. For the following reasons the court finds for the debtor in the Dotson case (modified plan) and for the trustee in the Phillips case (hardship discharge).

## Jurisdiction

The court's jurisdiction in these matters is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because these disputes are core proceedings under 28 U.S.C. § 157(b), this court's jurisdiction is extended to the entry of a final judgment or order.

## Findings of Fact

The parties have stipulated to the relevant facts and have filed a joint stipulation thereof. The court adopts the parties' stipulated facts and summarizes them as follows.

<u>The Dotson Case</u>:

Albert Dotson (hereinafter "Dotson") filed his chapter 13 petition for relief in this court on January 18, 2013. In the schedules accompanying that petition, Dotson valued his homestead at $59,892.00. Two mortgages encumber the homestead totaling $53,976.97.

Dotson disclosed ownership of a second parcel of realty that he valued at $39,200.00. That realty is unencumbered by mortgage but is subject to an IRS lien totaling $13,211.40.

Dotson's chapter 13 plan was confirmed on September 23, 2013. That plan provided, *inter alia*, for payment of 45% of the general, unsecured creditors' claims or about $31,800.00.

On December 19, 2013, Dotson moved to modify the confirmed plan to reduce the amount to be paid to general, unsecured creditors to $5,000.00. Further, Dotson amended Schedule A accompanying the petition to reduce the combined value of his real estate to $43,000.00. Although nothing in the stipulated facts explains how such a wide variance in valuation occurred between the filing of the case in January 2013 and December of that same year, the trustee does not contend that the reduced valuation is attributable

to Dotson's bad faith.

If the best interest test is applied as of the effective date of the original plan with the combined realty valued at $99,092.00, the modified plan does not pass the best interest test. If, however, the test is applied as of the date of the effective date of the modified plan, where the combined realty value is only $43,000.00, the best interest test is satisfied.

<u>The Phillips Case</u>:

Robin Marie Phillips (hereinafter "Phillips") filed her chapter 13 petition for relief in this court on November 5, 2010. In the schedules accompanying that petition, Phillips valued her homestead at $152,400.00.

Using Phillips' original valuation of her homestead, in a hypothetical chapter 7 liquidation case, unsecured creditors would receive $9,750.00. Phillips' plan was confirmed on February 14, 2011, and provided for payment of $9,750.00 to the unsecured creditors. To date, unsecured creditors have been paid $1,252.15 under the plan.

On February 18, 2014, Phillips filed a motion for hardship discharge. As of the time of the filing of that motion, the value of Phillips' homestead was $141,440.00. The diminution of the value from the time of the original plan to the filing of the motion for hardship discharge is due to the costs of needed repairs. Neither party contends that the reduced valuation is attributable to Phillips' bad faith.

If the best interest test is applied as of the effective date of the plan with the home valued at $152,400.00, the debtor has not paid unsecured creditors enough to satisfy the best interest test. If, however, the test is applied as of the date of the motion for hardship discharge, where the home value was $141,440.00, creditors would have been paid through this case more than they would have received had the estate been liquidated under chapter 7.

## Conclusions of Law

<u>The Dotson Case; Modified Plan</u>:

After confirmation, a chapter 13 plan may be modified to reduce the amount of payments to a particular class of claimants. *See* 11 U.S.C. §

1329(a)(1). In order for the modified plan to be confirmed, however, it must comply with the provisions of 11 U.S.C. § 1325. *See* 11 U.S.C. § 1329(b)(1) making the § 1325 requirements applicable to modified plans.

One of the requirements of § 1325 is the so-called best interest test. The Code provides:

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

Courts are split as to the meaning of the phrase "effective date of the plan" contained within § 1325(a)(4). In short, the disagreement is over the ambiguity that the phrase creates. Does the phrase "effective date of the plan" mean the date of the original plan confirmation or does it mean the date of the modified plan confirmation? Because with the passage of time estate property may appreciate or depreciate, the timing of the application of the best interest test may produce strikingly dissimilar results.

The majority of courts that have considered this issue hold that the phrase is best interpreted to mean the effective date of the modified plan. *In re Barbosa*, 236 B.R. 540, 547 (Bankr. D. Mass. 1999), *aff'd on other grounds,* 243 B.R. 562 (D. Mass. 2000), *aff'd* 235 F.3d 31(1st Cir. 2000); *In re Moran*, 2012 WL 4464492, *4 (Bankr. N.D. Tex. 2012); *In re Davenport*, 2011 WL 6098068, *3 (Bankr. D. Kan. 2011); *In re Auernheimer*, 437 B.R. 405, 409 (Bankr. D. Kan. 2010).[1]

In reaching that conclusion, the majority courts have made the following observations:

1. Using the modified plan date better recognizes the changes in property valuations due to the passage of time. "The better interpretation is

[1] For the minority view holding that property values should be applied as they existed on the original plan confirmation date see *Forbes v. Forbes (In re Forbes)*, 215 B.R.183, 189 (8th Cir. B.A.P. 1997); *In re Gibson*, 415 B.R. 735, 739 (Bankr. D. Ariz. 2009).

that ‘the effective date of the plan’ is the effective date of the plan as modified. This interpretation gives effect to § 1329(b)(2) and recognizes that the passage of time between confirmation of the original plan and confirmation of the modified plan does change the facts and circumstances of a Chapter 13 case. Those changes may benefit the debtor or benefit creditors, but the tests for confirmation in §§ 1322 and 1325 that are applied at confirmation of a modified plan under § 1329(b)(1) should be applied to the facts as they appear at the time of the confirmation of the modified plan.” *In re Barbosa,* 236 B.R. at 552 (quoting Keith M. Lundin, *Chapter 13 Bankruptcy*, § 6.44 at p. 6-133 (2nd Ed. 1994 & Supp. 1996) (internal quotation marks ommitted)).

2. If, instead of modifying the plan, the case was converted to one under chapter 7, the property of that chapter 7 estate would be valued after conversion. *See* § 348(f)(1)(B). This result makes the most logical way of reading § 1329 to require the same result in a hypothetical liquidation under the best interest test. *In re Barbosa,* 236 B.R. at 554; *In re Davenport,* 2011 WL 6098068 at *3; *In re Auernheimer,* 437 B.R. at 409.

3. The legislative history of § 1329 leads to the conclusion that the modified plan effective date is the best interpretation of the ambiguous phrase. “Both the language and the legislative history of § 1329 support a holding that it is the effective date of the amended Chapter 13 plan that controls the calculation of the best interest of creditors test, not the effective date of the original plan.” *In re Davenport,* 2011 WL 6098068 at *3.

For the reasons expressed in the authority cited above, this court holds that the proper reading of the phrase “effective date of the plan” as used in § 1325(a)(4) when considering a modified plan confirmation under § 1329 is the effective date of the modified plan and not the original plan.

Finally, before concluding the discussion of modified chapter 13 plans, the court notes that the trustee argues that the doctrine of *res judicata* requires that estate property values established as of the original plan confirmation date be used even in a modified plan confirmation.

The statute provides:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has

accepted, or has rejected the plan.

11 U.S.C. § 1327(a).

While § 1327 binds the debtor and creditors to the terms of the confirmed plan, Congress "provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications." *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994). The Seventh Circuit went on to note that if the doctrine of *res judicata* was to apply to a confirmed plan, there would be "little or no reason for Section 1329." *Id.* (quoting *In re Williams*, 108 B.R. 119, 123 (Bankr. N.D. Miss. 1989) (internal quotations marks omitted)). Therefore, the *res judicata* effect of § 1327 does not *per se* preclude consideration of changes in the value of estate property that occur between the original confirmation and the proposed modification.

The Phillips Case; Hardship Discharge:

The statute provides:

> (b) . . . , at any time after the confirmation of the plan and after notice and hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if–
>
>> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1328(b)(2).

Unlike the ambiguity that is inherent in the modified plan scenario discussed above, there is no ambiguity in the hardship discharge setting. The statute is clear and unambiguous that the property value for best interest purposes is established as of the effective date of the plan. *In re Easley*, 240 B.R. 563, 566 (W.D. Mo. 1999); *In re Dark*, 87 B.R. 497, 499 (Bankr. N.D. Ohio 1988)(holding that the valuation data used must be as of the plan's effective date and not some other time); *In re Keckler*, 3 B.R. 155, 159 (Bankr. N.D. Ohio 1980).

The discharge that a debtor receives under § 1328(b) is virtually the same as the discharge afforded to a chapter 7 debtor under § 727. Since the discharges under either section are similar, neither the debtor or creditors gain any advantage or suffer any detriment. Therefore, the question is begged; why should the court prevent the debtor from obtaining directly through a § 1328(b) discharge the same result that she could obtain indirectly through conversion to chapter 7?

In construing a statute, the language must be given its plain meaning unless the language is ambiguous or the plain language construction leads to an absurd result. *United States of America. v. Yates*, 733 F.3d 1059, 1064 (11th Cir. 2013); *Iberiabank v. Beneva*, 701 F. 3d 916, 924 (11th Cir. 2012).

Since there is no ambiguity with the phrase "effective date of the plan" in the hardship discharge setting, the court turns to whether the plain language construction of the phrase leads to an absurd result. The answer is no.

If the court could write on a clean sheet, it might provide that the best interest test be applied in a hardship discharge context valuing estate property as of the date of the motion for hardship discharge. That temporal valuation of the property, as earlier noted, neither advantages or disadvantages the debtor or creditors. Further, valuation of the property as of the date of the motion, saves the debtor the inconvenience and expense of converting the case to one under chapter 7. Yet, "it is irrelevant that '[w]e may not have made the same policy decision had the matter been ours to decide [if] we cannot say that it is absurd, ridiculous, or ludicrous for Congress to have decided the matter in the way the plain meaning of the statutory language indicates it did.'" *CBS Inc. V. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001)(quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997)). Here, the plain language construction of the phrase cannot be said to produce an absurd, ridiculous, or ludicrous result. The best interest test in a hardship discharge scenario must be applied giving values to estate property as of the date that the plan was originally confirmed.

Conclusion

For the foregoing reasons, the trustee's objection to the debtor's motion to modify the plan in the Dotson case will be overruled, but the trustee's

objection to the hardship discharge motion in the Phillips case will be sustained. Separate orders will enter in the respective cases accordingly.

Done this 17th day of July, 2014.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
Richard D. Shinbaum, Dotson's Attorney
Earl Gillian, Phillips' Attorney
Trustee